**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**CALEDONIA INVESTMENT CORPORATION, Defendant.**

**Civ. No. 86–1264 HL.**

United States District Court, D. Puerto Rico.

Oct. 26, 1989.

OPINION AND ORDER

LAFFITTE, District Judge.

This is an action by the Federal Deposit Insurance Corporation ("F.D.I.C.") in its corporate capacity for collection of monies on a promissory note and foreclosure of a mortgage on the real property securing the note.[1] Banco de Ahorro, F.S.B. ("the Bank") made a secure loan of $300,000 at 15.5% annual interest rate to Caledonia Investment Corporation ("Caledonia"), Alberic Girod, and Ramiro Colon, Jr. The three borrowers subscribed both the promissory note and mortgage deed executed on September 24, 1980, as joint debtors.[2] After the bank failed, the FDIC became the receiver and subsequently assigned this cause of action to FDIC.

I. FACTUAL BACKGROUND:

On January 22, 1985, the Superior Court of Puerto Rico, Ponce Section, granted the Bank's motion for voluntary dismissal without prejudice against Alberic Girod. On June 5, 1987 this Court entered partial summary judgment against Caledonia for the total amount due. *See Federal Deposit Insurance Corp. v. Caledonia Investment Corp.*, 862 F.2d 378 (1st Cir.1988). The remaining defendants, Ramiro Colon Jr., Georgiana Ortiz de Colon, and their conjugal partnership ("Colon"), acknowledge their responsibility over the principal amount due, but question the amount of interest accrued. Defendants move the Court for judgment on the pleadings against them in the amount of $345,100.17. Colon contends that this figure represents an outstanding principal of $243,172.29 plus "non-usurious interest" on said principal in the amount of $101,927.18 from August 17, 1984 to September 30 1988. Plaintiff FDIC opposes, claiming that Colon is

Luis F. Carlo Mendoza, Alfredo Archilla Guenard, Mayaguez, P.R., Rafael B. Ortíz Segura, Gonzalez, Bennazar & Colorado, Hato Rey, P.R., Raúl E. González Díaz, San Juan, P.R., for FDIC.

Gabriel I. Peñagaricano, San Juan, P.R., for Caledonia Inv. Corp. and Ramiro L. Colón.

1. This case was removed to federal court under 12 U.S.C. § 1819(4).

2. "[T]he joint debtor is the person who signs together with another person a document in which the borrower enters into a joint obligation to pay a certain amount of money." *Mansiones de Park Gardens v. Scotiabank de Puerto Rico,* 114 D.P.R. 513, 14 T.R.R. 664, 671 (1983).

indebted for the principal amount of $243,-172.29 and the amount of $181,952.83 for accrued interest as of December 27, 1988 plus interest thereafter at the daily accrual rate of $103.27, plus attorney's fees and costs.

Pending before this Court is the issue of whether Colon is entitled to interpose the defense of usury against the FDIC. Colon argues that he is a joint debtor on the promissory note and mortgage deed, not a guarantor, and as such, the usury defense is available to him under Commonwealth law. On the other hand, the FDIC contends that federal law is controlling in the case at bar. It argues that local usury law is preempted in cases where the FDIC acts in its corporate capacity. The FDIC further claims that it is a holder in due course and thus, Colon cannot assert usury as a defense. The Court finds that the usury defense is not available to Colon and thus he is jointly liable with Caledonia for the total accrued interest due.

## II. COMMONWEALTH LAW:

Under Puerto Rico's usury statute, creditors are precluded from collecting any usurious interest. 31 L.P.R.A. sec. 4594.[3] The public policy behind the usury law is to protect needy and ignorant borrowers who stand in an inferior bargaining position when confronted with greedy money lenders. As the economic dynamics of modern society changed, exceptions had to be made in order to facilitate the flow of money and commercial transactions. S. Borges, *Usury and the Corporate Exception*, 39 U.P. R.L.Rev. 637, 639 (1970). For instance, corporations with an unlimited amount of shareholders, cannot raise the usury defense because they have a legal and business know-how which places them at a different level of expertise as compared to

the needy borrower for whom the usury defense was created. 14 L.P.R.A. sec. 2206. In contrast, a close corporation composed of a finite number of shareholders, can raise the defense.[4] 14 L.P.R.A. sec. 1102. However, a guarantor of a corporation's debt, other than a corporation not exceeding eleven shareholders, is barred from asserting the usury defense, MANSIONES DE PARK GARDENS v. SCOTIABANK DE PUERTO RICO, INC., 114 D.P.R. 513, 14 T.R.R. 664 (1983); *F.D.I.C. v. La Rambla Shopping Center*, 791 F.2d 215, 222 (1st Cir.1986).

Colon claims the usury defense is available to him as joint debtor. Colon alleges that the case of MANSIONES does not apply because he is a joint debtor with, and not a guarantor of a corporation. Although the Puerto Rico Supreme Court has not decided the specific issue of whether a natural person who is a joint debtor with a corporation may claim the usury defense, the rationale in MANSIONES is relevant to deciding whether the defense of usury is available to Colon.

In MANSIONES, the Court considered the essence of the usury defense—protection of needy and vulnerable borrowers—in order to resolve the issue of whether natural persons guaranteeing loans to corporations may raise the defense of usury. The court found that:

... the same considerations that have made it impossible for corporations to raise the defense of usury support the conclusion that natural persons who act as guarantors, joint or not, may not use this protection, either. Guarantors in said situations assure their responsibility as such, usually to facilitate commercial transactions of a certain complexity and involving a certain sum. They can avail themselves of adequate advice. They

**3.** Puerto Rico's usury law provides in part: "No contract wherein or whereby there is reserved ... any greater rate of interest than is allowed by this chapter, may be made effective in any court in Puerto Rico, except for the amount of the principal due; and the court must provide, furthermore, in the judgment directing the debtor to pay the principal, that the creditor shall recover only seventy-five percent of said principal and that the remaining twenty-five percent

shall be awarded to and recovered by the Commonwealth of Puerto Rico ..." 31 L.P.R.A. sec. 4594.

**4.** A debtor corporation having no more than eleven shareholders, as set forth in the certificate of incorporation, may raise the defense of usury when faced with a claim on a loan. 14 L.P.R.A. sec. 1102(c).

generally do not belong to the group of individual borrowers for whom the legislation on usury was designed.

*Id.* at 672 (official translation).

In determining whether Colon as a natural person who jointly obligated himself with a corporation can assert the usury defense, it is important to determine whether Caledonia is a corporation that does not exceed eleven stockholders.

■ Puerto Rico, like other jurisdictions, has provided in its General Corporation Law, 14 L.P.R.A. § 1102(c) that a close corporation cannot exceed a certain number of shareholders, provided that the limited number be explicitly stated in the certificate of incorporation, which will never be more than eleven. Only then would a corporation be entitled to interpose the usury defense.[5] The Court takes judicial notice that Caledonia's certificate of incorporation does not specify the number of shareholders in the corporation.[6] We therefore find that the usury defense is not available to Caledonia because it did not *explicitly* limit to eleven or less the number of shareholders in the Certificate of Incorporation.

■ Our conclusion that Caledonia does not classify as an "eleven person" corporation is also supported by the record. On the original pleadings, Caledonia did not present the defense and did not do so at any stage of the pleadings. The usury defense is an affirmative defense which must be presented in the original pleadings, otherwise it will be waived. *In re Casbeer*, 793 F.2d 1436, 1438 (5th Cir.1986); *Federal Deposit Insurance Corp. v. Julius Richman, Inc.*, 666 F.2d 780, 781 (2nd Cir.1981). Thus, Caledonia is barred from asserting the usury defense. However, this does not automatically end our inquiry with respect to Colon. Colon's relationship to Caledonia in the light of MANSIONES must be addressed.

Colon's argument that he is a joint debtor, not a guarantor to a corporate debt, is inconsequential. He alleges that MANSIONES' holding applies only to the latter type. We disagree. In applying the law, we cannot adhere to strict judicial terminology blindly. Rather, we must determine whether there is a meaningful difference between the guarantor and the joint debtor of a corporate loan in light of MANSIONES.

The extension of the rule enunciated in MANSIONES, is justified in the case at bar. We find it impossible to conceive Colon as a needy and ignorant borrower. When the note and mortgage deed were executed, he was a shareholder and treasurer of Caledonia. As such, it is reasonable to assume that he obtained adequate advice from the corporation's lawyers. His closeness to Caledonia and the fact that he is an experienced banker places him outside the circle of borrowers the usury law pretended to protect.

Colon not only facilitated the commercial transaction with a corporation which is

---

5. 14 L.P.R.A. § 2206 provides:
   Notwithstanding any restriction or penalty established by law, any corporation borrowing money, may enter into contracts, incur in liabilities and borrow money, whether in the Commonwealth of Puerto Rico or in any other place; at any rate considered acceptable, and no debtor of this kind shall plead any statute against usury in any proceeding or lawsuit instituted to enforce the payment or compliance with any liability resulting from a loan of that sort, whether such liability is evidenced by any bond, promissory note, contract or other writing signed, assumed or guaranteed by such debtor or any successor or assignee thereof. . . .
   14 L.P.R.A. § 1102(c) reads:
   In addition to the matters required to be set forth in the certificate of incorporation by subsection (a) of this section and to any mat-

ters set forth in the certificate of incorporation pursuant to subsection (b) of this section, the certificate of incorporation may also contain a provision that the corporation shall have not more than a stated number of stockholders at any one time which stated number shall be not more than eleven (11). . . .
   [T]he provisions of Section 2206 of this title shall not apply to any corporation whose certificate of incorporation contains a provision pursuant to this subsection (c) that it shall not have more than a stated number of stockholders.

6. We have annexed to this Opinion and Order a copy of the Certificate of Incorporation of Caledonia Investment Corporation, originally incorporated under the name of Columo Development Corp.

barred from using the usury defense. He was an integral and essential part of the transaction and of the corporation. Colon's and Caledonia's relation to the usury law must be the same.

We also find further support for the proposition that the defense of usury is not available to Colon in Article 1094 of the Civil Code, 31 L.P.R.A. § 3105. Colon is a joint debtor, as he admits, with a corporation where the defense of usury is not available to the corporation. Article 1094 of the Civil Code provides:

> Each of the joint creditors may do whatever may be profitable to the others, but not what be prejudicial.
>
> *The action initiated against any of the joint debtors shall prejudice all of them.* (Emphasis supplied.)

Because the person who signs a promissory note with another, like the instant case, becomes a joint debtor, the interplay of the applicable provisions of the Puerto Rico General Corporate Law regarding the defense of usury with Article 1094 of the Puerto Rico Civil Code in light of MANSIONES, leads us to the inescapable conclusion that Colon stands on the shoes of Caledonia for the purposes of interposing the defense of usury. *See F.D.I.C. v. Consolidated Mortgage and Finance Corp.*, 691 F.Supp. 557 (D.P.R.1988), *remanded*, 805 F.2d 14 (1st Cir.1986).

### III. FEDERAL LAW:

In the factual circumstances of this case, the application of local usury law does not hinder federal policy objectives because Colon cannot assert the defense. Assuming the defense is available to Colon under local law, the federal doctrine of holder in due course would probably prevent him from asserting the defense. In other words, all roads lead to Rome.

The FDIC is highly protected when acting in its corporate capacity in a Purchase and Assumption transaction. This protection is codified in 12 U.S.C.A. sec. 1823(e), which embodied the holding in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), *rehearing denied*, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942). Basically, no agreement tending to diminish the FDIC's interest in any asset will be valid unless it satisfies four requirements specified in the federal statute. However, this statute does not automatically grant the FDIC with a holder in due course status. *Gunter v. Hutcheson*, 674 F.2d 862, 867 (11th Cir.1982); *Federal Deposit Insurance Corp. v. Hatmaker*, 756 F.2d 34, 36 (6th Cir.1985). If the FDIC is a holder in due course, it must be as a matter of federal common law. *Federal Deposit Insurance Corp. v. Wood*, 758 F.2d 156, 159 (6th Cir.1985), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).

In *Wood*, the Sixth Circuit preempted a local holder in due course statute in a case involving the FDIC acting in its corporate capacity as part of a Purchase and Assumption transaction. The defendant in said case was the guarantor to a promissory note. The jury found the note was usurious but the FDIC had a holder in due course status under Michigan law. On appeal, the Sixth Circuit Court held that if the FDIC was not a holder in due course under Michigan law, this would hinder federal policy objectives, and thus local law would not be applicable. Assuming the FDIC was not a holder in due course locally, it was such under the federal common law.

Basically, expediency was found to be an essential element to a Purchase and Assumption transaction. In *Wood*, the Court reasoned that the FDIC was created to promote a stable national banking system in which the people can trust. *First State Bank v. United States*, 599 F.2d 558 (3rd Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). When a local bank fails, the FDIC's purpose is to pay depositors as soon as possible. A uniform concept of holder in due course is justified and necessary because if the FDIC is to consider state variations in the allowance of defenses, the congressional requirement that Purchase and Assumption transactions be made only upon comparison with the cost of liquidation could not be

fulfilled. 12 U.S.C. sec. 1823(c)(4)(A).[7] Moreover, giving the FDIC a holder in due course standing vis-a-vis local usury laws does not disrupt commercial relations based on state law since defendants would be prejudiced just as much had the note in question been transferred to any other holder in due course. Negotiable instruments are always susceptible of ending up in the hands of a holder in due course and thus, the consequences cannot be deemed as unjust. Defendant can still present his claim by waiting in line with the rest of the bank's creditors. *Wood,* 758 F.2d at 161.

Other Courts have followed Wood. In *Federal Deposit Insurance Corp. v. Manatt,* 688 F.Supp. 1327 (E.D.Ark.1988), the Court held that the FDIC was a holder in due course under federal common law even if confronted with a valid defense of accord and satisfaction. It stated:

> (b)ecause of the great number of banks which have failed in recent years, many courts have faced the same issues addressed in *Wood.* The consistent holding of these cases have been that the FDIC has holder in due course status and is, therefore, shielded from the various defenses which are not valid against a holder in due course.

*Id.* at 1331.

In passing, we note that in *Federal Deposit Insurance Corp. v. Bank of Boulder,* 865 F.2d 1134, 1136, 1139 (10th Cir. 1988), the Court found state laws to be superseded on transferability of assets and fashioned a uniform federal rule allowing the FDIC to acquire non-transferable assets in Purchase and Assumption transactions.

The First Circuit has not ruled on the specific issue of whether the usury defense is preempted. However, it has acknowledged the importance of expediency in this type of agreement because it is of great value to the national banking system. *Federal Deposit Insurance Corp. v. P.L.M. Int'l.,* 834 F.2d 248 (1st Cir.1987); *Federal Deposit Insurance Corp. v. La Rambla Shopping Center, Inc.,* 791 F.2d 215, 218 (1st Cir.1986). *See also, Federal Deposit Insurance Corp. v. Grupo Girod Corp.,* 680 F.Supp. 486, 490 (D.P.R.1988).

■ We agree with the court's reasoning in *WOOD.* There are three requirements for the FDIC to be a holder in due course under the federal doctrine: the commercial paper must be acquired with good faith, for value, and the FDIC must lack actual knowledge of the defense at the time it entered into the Purchase and Assumption agreement. *Id.* at 161.

Colon did not question the good faith and for value aspects of the doctrine. He only alleges that the FDIC had actual knowledge because the defense was presented in the original complaint.

■ However, these allegations are not enough to prove actual knowledge. The FDIC is not required to inspect the assets of a failed bank before it agrees to enter into the Purchase and Assumption agreement and thus it cannot be charged with actual knowledge merely because the information was in the Bank's files. *Id.; Gilman v. Federal Deposit Insurance Corp.,* 660 F.2d 688 (6th Cir.1981).

In summary, we find that either under Commonwealth law or federal law Colon, as a natural person who jointly obligated himself with a close corporation, is not protected by the usury law. Colon is obligated to pay the total principal amount due plus the agreed upon interest.

WHEREFORE, the motion to enter judgment on the pleadings by Ramiro Colon Jr., Georgiana Colon Ortiz, and their conjugal partnership is hereby DENIED. Judgment shall be entered for the plaintiff in the

---

7. There are two ways in which the FDIC can pay depositors when a bank fails: liquidations, and purchase and assumption transactions. In purchase and assumption transactions, "... the Corporation attempts to arrange for another bank to 'purchase' the failed bank and reopen it without interrupting banking operations and with no loss to the depositors. A purchase and assumption involves three entities: the receiver of the failed bank, the purchasing bank, and the FDIC as insuror. In most cases, the FDIC is appointed receiver by the appropriate banking authority and thus acts in two separate capacities: as receiver and as corporate insuror." (citation omitted). *Gunter v. Hutcheson,* 674 F.2d 862 at 865 (1982).

principal amount of $243,172.29 plus $181,-952 for accrued interest as of December 27, 1988, plus interest thereafter at the daily rate of $103.27, plus attorney's fees and costs.

IT IS SO ORDERED.